UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RUBEN REYES,           )
              Plaintiff   )
                     )
                     )
        v.            )     Civil Action No. 12-30163-KPN
                     )
                     )
CAROLYN W. COLVIN,   )
Acting Commissioner of Social   )
Security Administration,[1]   )
           Defendant   )

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS and DEFENDANT'S
MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER
(Document Nos. 16 and 18)
September 30, 2013

NEIMAN, U.S.M.J.

      This is an action for judicial review of a final decision by the Commissioner of the

Social Security Administration ("Commissioner") regarding an individual's entitlement to

Social Security Disability Insurance ("SSDI") benefits pursuant to 42 U.S.C. § 405(g).

Ruben Reyes ("Plaintiff") asserts that the Commissioner's decision to deny him such

benefits -- memorialized in a February 24, 2011 decision of an administrative law judge

-- is not supported by substantial evidence.  He has filed a motion for judgment on the

pleadings and the Commissioner, in turn, has moved to affirm.

      The parties have consented to this court's jurisdiction.  *See* 28 U.S.C. § 636 (c);

---

    [1] Carolyn W. Colvin became the commissioner of the Social Security
Administration on February 14, 2013, and has been substituted as defendant in this
action pursuant to Fed. R. Civ. P. 25 (d)(1) and (2).

Fed. R. Civ. P. 73.  For the following reasons, the court will deny Plaintiff's motion and allow the Commissioner's motion to affirm.

## I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).  The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co.  v. NLRB*, 305 U.S. 197, 229 (1938)).  Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts.  *Rodriguez*, 647 F.2d at 222; *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987).  A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim.  *See Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing."  42 U.S.C. § 405(g).

2

## II. Background

Plaintiff applied for SSDI benefits on September 24, 2008.  (Administrative Record ("A.R.") at 12.)  Plaintiff claimed that he was disabled due to degenerative disc disease, nerve damage, rheumatoid arthritis, diabetes and thyroid problems, with an alleged onset date of November 3, 2004.  (A.R. at 238-239.)  After Plaintiff's claim was denied initially and upon reconsideration, he requested a hearing before an administrative law judge ("ALJ"), which hearing took place on July 27, 2010.  During the hearing, the ALJ decided to continue the matter until January 31, 2011, so that Plaintiff could secure additional medical records and undergo an evaluation.  (A.R. at 95-100.)  After the supplemental hearing, the ALJ issued a written decision denying Plaintiff's claim.  (A.R. at 21.)

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final.  (A.R. at 1.)  Plaintiff then filed the instant action, the Commissioner compiled the administrative record, and the parties submitted the cross motions at issue.

## III. Disability Standard and the ALJ's Decision

An individual is entitled to SSDI benefits if, among other things, he has an insured status and, prior to its expiration, is disabled.  *See* 42 U.S.C. § 423(a)(1)(A) and (D).  Plaintiff's insured status has not been challenged.  The Social Security Act (the "Act") defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . .

. can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A).  An individual is considered disabled under the Act

> only if his physical and mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  *See generally Bowen v. Yuckert*, 482 U.S. 137, 146-49

(1987).

In determining disability, the Commissioner follows the five-step protocol

described by the First Circuit as follows:

> First, is the claimant currently employed?  If he is, the claimant is automatically considered not disabled.

> Second, does the claimant have a severe impairment?  A "severe impairment" means an impairment "which significantly limits the claimant's physical or mental capacity to perform basic work-related functions."  If he does not have an impairment of at least this degree of severity, he is automatically not disabled.

> Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1?  If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

> Fourth . . . does the claimant's impairment prevent him from performing work of the sort he has done in the past?  If not, he is not disabled.  If so, the agency asks the fifth question.

> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy?  If so, he is disabled; if not, he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

In the instant case, the ALJ found as follows with respect to these questions:

Plaintiff had not engaged in substantial gainful activity since his alleged onset date of his disability, November 3, 2004 (question 1); Plaintiff suffers from "severe" impairments, namely, degenerative disc disease of the lumbar spine, diabetes, and left knee impairment, but these impairments do not meet or medically equal a listed impairment (questions 2 and 3); and Plaintiff has the residual functional capacity ("RFC") to perform sedentary work subject to certain limitations and is able to perform work that exists in significant numbers in the national economy (questions 4 and 5).  Therefore, the ALJ determined, Plaintiff is not disabled within the meaning of the Act.

IV. DISCUSSION

Plaintiff makes three arguments challenging the ALJ's decision.  First, Plaintiff asserts that the ALJ erred in finding that his cardiac condition was not a severe impairment.  Second, Plaintiff argues that the ALJ improperly failed to obtain expert testimony as to the onset date of his impairments.  And third, Plaintiff asserts that the ALJ's RFC assessment was inconsistent with the hypothetical question posed to the vocational expert and, thus, was erroneous as a matter of law.  In response, the Commissioner asserts that substantial evidence in the record supports the ALJ's findings.  The court finds that the Commissioner has the better argument.

A.  Severity of Plaintiff's Cardiac Impairment

In a establishing a prima facie case, the second step of the SSDI disability analysis requires a plaintiff to show that he or she has a severe impairment that "significantly limits the claimant's physical or mental capacity to perform basic work-related functions."  *Goodermote*, 690 F.2d at 6-7.  Here, according to Plaintiff, the

evidence shows that his "cardiac problems have a significant impact on his ability to perform basic work activities" and, thus, should have been deemed severe.

Plaintiff's argument is unconvincing.  The only medical record that Plaintiff cites in support is the cardiology consultation performed by Dr. Randy Kiewe in June 2007, which he was performing in order to clear Plaintiff for spinal surgery.  (A.R. at 444-47.) Dr. Kiewe indicated that Plaintiff had a history of myocardial infarction and suffered from poorly controlled diabetes and recommended that he undergo two cardiac tests to ensure that he was medically stable for the surgery.  (A.R. at 446-47.)  Plaintiff, however, never had the tests performed.  (A.R. at 32-33.)  Standing alone, Dr. Kiewe's description and recommendation for testing does not provide any evidence of functional loss. *See Sitar v. Schweiker*, 671 F. 2d 19, 20-21 (1st Cir. 1982) (symptoms without evidence of functional loss do not establish a disability); *Ortega v. Colvin*, 2013 WL 4056184, at *4 (D. Mass. August 9, 2013) (a diagnosis is not enough to show a condition is disabling); *Church v. Astrue*, 2012 WL 369424, at *8 (D. Mass. February 2, 2012) ("[A] mere diagnosis is insufficient to establish an impairment is severe as defined by the regulations.") (citing to 42 U.S.C. 423 (d)(2)(B)).

Furthermore, the record actually contains conflicting evidence of the alleged cardiac problems.  For example, Plaintiff testified that he had a heart attack in January of 2009 and was treated at Holyoke Hospital.  (A.R. at 88.)  The discharge papers from Holyoke Hospital, however, indicate that the reason for the hospitalization was a "change in mental status" and cite poly-substance abuse, diabetic ketoacidosis, acute renal failure, pancreatitis, and leukocytosis as the "principal discharge diagnosis."  (A.R.

at 473.)  The hospital records also note that Plaintiff had been using alcohol and crack cocaine.  (A.R. at 473, 478-79.)  In light of this conflicting evidence and, perhaps more importantly, the lack of record evidence detailing any cardiac issues, the court finds no error in the ALJ's determination that Plaintiff's cardiac impairment was not severe.  *See Evangelista*, 826 F. 2d at 141 (conflicts in evidence and the credibility of witnesses are for the administrative law judge to decide, not the courts).

B.  Medical Advisor

Plaintiff next argues that the ALJ erred by not having a medical advisor testify as to the onset date of his disability.  Plaintiff's primary concern appears to be that the ALJ failed to consider medical records that addressed his alleged "neck problems, left ankle problems, cardiac history, and headaches."  The testimony and the medical records, Plaintiff argues, provided sufficient evidence that the onset date of these alleged impairments arose prior to the date he was last insured, December 31, 2007.  Citing Social Security Ruling 83-20, Plaintiff argues that, even though many of the medical records are dated beyond the date he was last insured, the ALJ should have sought the advice of an expert to determine whether the impairments preceded that date.

Social Security Ruling 83-20 does address the onset date of a disability.  An administrative law judge, in addition to determining whether an individual is disabled, must also establish its onset date.  Establishing that date may be critical because it could affect both eligibility and the period for which a claimant would be eligible for benefits.  Of course, it is essential that the onset date be established and supported by evidence.

In this case, however, the ALJ did not need to determine the onset date.  An onset date need not be established "unless an individual has been determined at some point to have been disabled during the insured period."  *Biron v. Astrue,* 2010 WL 3221950, at *6 (D. Mass. Aug. 13, 2010).  Since the ALJ determined that Plaintiff's impairments did not rise to the level of a disability at any time, there was no requirement to determine their onset.  *See id.*; *see also Key v. Callahan*, 109 F.3d 270, 273-74 (6th Cir. 1997) ("Since there was no finding [of disability] no inquiry into onset date is required."); *McDonald v. Astrue*, 2011 WL 3562933, at *10 (D. Mass. Aug. 15, 2011) (because there was no finding of disability, "the ALJ was not under any obligation to apply SSR 83-20").

That said, the ALJ did acknowledge that Plaintiff alleged an onset date of November 3, 2004, when he was involved in a "serious motor vehicle accident" (A.R. at 14); Plaintiff himself testified that all his impairments could be traced to that accident (A.R. at 49-50, 80-83).  In fact, the onset date for impairments of such traumatic origin is usually self-evident.  *Mason v. Apfel,* 2 F. Supp. 2d 142, 146 (D. Mass. 1998) (citing *Field v. Sec'y of Health & Human Servs.,* 1994 WL 495781, at *2 (D. N.H. Aug. 30, 1994)).  As a result, the ALJ exercised proper judgment in deeming the impairments to be of "traumatic origin" pursuant to SSR 83-20, thereby establishing, as here, the date of the accident as the alleged onset date.  Had the impairments been of non-traumatic origin, the onset date may have had to have been inferred, in which case the ALJ would need to call a medical advisor because such an inference must have a "legitimate medical basis."  *See* SSR 83-20.  That was simply not the situation in the case at bar.

C.  Inconsistency between Residual Functional Capacity and Hypotheticals

Finally, Plaintiff challenges the ALJ's determination that his impairments do not prevent him from performing other work that is in sufficient quantity in the national economy.  Most particularly, Plaintiff argues that the hypothetical questions offered to the vocational expert contained less restrictive limitations that were materially different from those in the ALJ's decision and, as a result, the decision is factually flawed.  The court disagrees.

The ALJ asked the vocational expert three hypothetical questions concerning whether an individual with certain characteristics could perform Plaintiff's past job or other jobs existing in the national economy.  The hypothetical of most concern to Plaintiff was the following:

> An individual who can do light exertion, and maximum standing and walking of four hours a day with the use of a cane for ambulating, posturals are all occasional, except no ladders, ropes, and scaffolds, and no operation of hazardous machinery.

(A.R. at 63.)  According to Plaintiff, the material difference between this hypothetical and the ALJ's decision is the absence of any mention of Plaintiff's use of a cane for ambulation.  Arguing that this flaw was fatal to his claim, Plaintiff cites *Slovak v. Barnhart,* 2003 WL 21246049 (D. N.H. May 29, 2003), where the hypothetical (that claimant "was able to perform limited reaching, handling, gross manipulation, fingering, fine manipulation, and feeling") differed markedly from the administrative law judge's ensuing decision (that claimant "was unable to perform tasks that require handling or fingering").  *Id.* at *7 (internal quotation marks omitted).  The court remanded the matter for a new hearing.

Plaintiff's situation is quite different.  In *Slovak*, the vocational expert testified based on a less restrictive limitation (limited ability to perform certain tasks) than the administrative law judge's decision (complete inability to perform certain tasks).  Here, however, the vocational expert's testimony was based on a more restrictive limitation (use of cane) than was the ALJ's decision, which omitted the use of the cane. Accordingly, the discrepancy between the ALJ's RFC determination and the hypothetical offered to the vocational expert is immaterial because "the universe of jobs identified by the [expert] in response to the hypothetical is smaller than the universe of jobs contemplated by the RFC."  *Daniels v. Astrue*, 2013 WL 1385396, at *5 (D. Mass. Apr. 2, 2013).  Clearly, any occupation that can be performed with the use of a cane for ambulation can also be performed by a person without the need for a cane, everything else being equal.  *See Poland v. Apfel,* 2000 WL 36950, at *14 n. 19 (D. N.H. Dec. 22, 1999) ("If the [expert] believed that jobs existed . . . which could be performed by a person with the set of limitations identified in the hypothetical, then a person with a set of limitations less restrictive than that identified in the hypothetical -- i.e., the set of limitations identified in the ALJ's final opinion -- could perform those same jobs.").

Moreover, as this court previously explained, "[a]n administrative law judge's failure to use in his RFC assessment the exact language of a posed hypothetical does not automatically render his findings erroneous."  *Ortega,* 2013 WL 4056189, at *3 (citing *Greene v. Astrue,* 2012 WL 1248977, at *4 (D. Mass. April 12, 2012)).  Only when the difference is material can it potentially constitute an error.  *Id.* at *4.  Because the difference in the language here was not material, the ALJ did not err in relying on

the vocational expert's testimony in finding that there were sufficient jobs in the national economy which Plaintiff could perform.

<p style="text-align:center">V.  CONCLUSION</p>

For the reasons stated, Plaintiff's motion is DENIED and the Commissioner's motion to affirm is ALLOWED.

SO ORDERED.

DATED:  September 30, 2013

<div style="margin-left:50%">
/s/   Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge
</div>